IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:05CR149 |
| v. | : | JUDGE THOMAS M. ROSE |
| MOHAMMAD RADWAN OBEID | : | THE UNITED STATES' SENTENCING MEMORANDUM |
| | : | |

The United States, by counsel, respectfully submits this Sentencing Memorandum for the Court's consideration.

## INTRODUCTION

1. On December 29, 2005, defendant MOHAMMAD RADWAN OBEID pled guilty to a single count Indictment filed herein on October 25, 2005. This Indictment charged him with Making a Material False Statement in violation of 18 U.S.C. §1001. No written plea agreement was entered into by the parties. The parties do agree that the maximum statutory punishment in this case is: five years imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment. On March 13, 2006 the U.S. Probation Office published its final pre-sentence investigative report (PSI). It calculated the defendant's total offense level as 4 with a Criminal History Category of III. This established a recommended U.S.S.G. sentencing range of 0-6 months. The PSI recommended that defendant receive a sentence of 6 months.

2. On December 29, 2005, the Government filed a motion seeking a sentencing hearing to present evidence pursuant to 18 U.S.C. §3553(a), *United States v. Booker*, – U.S. –, 125 S. Ct. 738 (2005), and §1B1.3 U.S.S.G.

3.      Evidentiary sentencing hearings were conducted on January 18, April 4, and May11, 2006.  At the initial evidentiary, the Government called Laura Girolamo, a Troy Public Library Reference Librarian, and David A. Vazquez, a Norfolk, VA Policeman as witnesses.  At the second hearing, the Government called FBI SA s Tim Shaw and Jeff Colburn.  At the final hearing, the Government recalled SA Colburn, and called DCIS SA Mark Pohl.  The Government also introduced 8 exhibits.  The defense called no witnesses, and presented no exhibits.

## LAW

Federal courts are required to consider the six mandatory sentencing factors set forth in 18 U.S.C. §3553(a).  These six factors are:

1. The nature and circumstances of the offense;
2. The history and characteristics of the defendant;
3. The seriousness of the offense, respect for the law, and a just punishment;
4. Adequate deterrence;
5. Protection of the public; and
6. Rehabilitation of the defendant.

As a result of the Supreme Court's remedial holding in *United States v. Booker*, the advisory Sentencing Guideline range is now considered a seventh sentencing factor that must be considered.  "[W]hile the Guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant." *United States v. McBride*, No. 04-4347, at *5 (6th Cir. Jan. 17, 2006), *See e.g.*, *United States v. Webb*, 403 F.3d 373 (6th Cir. 2005).  Calculation of the appropriate guideline sentence is only the first step in sentencing decisions under *Booker*, for the court must also consider the §3553(a) factors before making the ultimate decision.  *United States v. Haack*, 403 F.3d 997, 1002-03 (8th Cir. 2005).  "In contrast to the sentencing scheme before *Booker* when a sentence outside the mandatory

2

guideline range was permitted only on very limited grounds, there are now more sentencing variables." *See e.g., United States v. Mickelson*, No. 05-2324, –F.3d – (8th Cir. Jan. 6 2006). Framing the issue as one about 'departures' has been rendered obsolete. It is now clear post-*Booker,* what is at stake is the *reasonableness* of the sentence, not the *correctness* of the 'departures' as measured against pre-Booker decisions. *See McBride at *6.* quoting *United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005).

Section 1B1.3 of the U.S.S.G. provides for district courts to consider certain relevant conduct under the guise of sentencing accountability. This section allows the court to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant. In addition, in cases of jointly undertaken criminal activity, the court may consider all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."

Section 6A1.3(a) of the U.S.S.G. states: "When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an *adequate opportunity to present information* to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."

The burden of proof established in any sentencing evidentiary hearing is a preponderance of the evidence. See §6A1.3, U.S.S.G. Comment, (2004 ed.) ("The Commission believes that use of a preponderance of the evidence standard is appropriate . . . ."); United States v. Stone, __ F.3d __, __, 2005 WL 3501590, at *3 (6th Cir. 2005) ("Booker did not eliminate judicial fact-

3

finding . . . . District courts, in cases such as these, must, therefore, calculate the Guideline range as they would have done prior to Booker, but then sentence defendants by taking into account all of the relevant factors of 18 U.S.C. §3553, as well as the Guidelines range."); United States v. Warwick, No. 04-6265, 149 Fed. Appx. 464, 467 n.1 (6th Cir. Sept. 20, 2005) ("It is true that the Government must prove by a preponderance of the evidence both facts supporting (post-Booker, advisory) sentencing enhancements, and the fact of prior convictions that contribute to the defendant's criminal history score."); United States v. Garcia-Gonon, __ F.3d __, __, 2006 WL 12958, at *4 (8th Cir. 2006) ("Under an advisory Guidelines regime, sentencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence."); United States v. Magellanez, 408 F.3d 672, 685 (10th Cir.) , cert. denied, 126 S. Ct. 468 (2005), ("[D]istrict courts are still required to consider Guideline ranges, . . . which are determined through application of the preponderance standard, just as they were before."); United States v. Mares, 402 F.3d 511, 519 (5th Cir.) , cert. denied, 126 S. Ct. 43 (2005);  ("The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence.").

## DISCUSSION

The defendant MOHAMMAD RADWAN OBEID's outrageously brazen and alarming internet messages drew the attention of both a Troy, Ohio public librarian and an off-duty Norfolk, Virginia police officer.  Both Ms. Girolamo and Officer Vazquez were sufficiently shocked by defendant's actions that each independently contacted the FBI with their concerns.  As a result, the Dayton, Ohio Joint Terrorism Task Force (JTTF) instituted an investigation that

ultimately led to defendant's arrest, indictment and conviction.  As an out-of-status Jordanian national, United States immigration officials have ordered the defendant's deportation.  This deportation order will take effect immediately following defendant's completion of whatever period of incarceration this Court imposes.

The evidence presented at the three sentencing hearings clearly established the defendant's complete disdain for virtually everything this nation stands for.  Under the 1st Amendment to our Constitution, even an illegal non-resident, is free to express unpopular views and opinions while in the United States.  In subject case, the Court must consider defendant's "relevant conduct," that under 18 U.S.C. §3553(a), and U.S.S.G. §1B1.3 to determine an appropriate sentence *sufficient, but not greater than necessary*.

The defendant is a 34 year old college graduate.  He has pled guilty to knowingly, willfully and repeatedly providing materially false statements to FBI agents who were conducting an official investigation into his possible providing of material support to terrorists.  The evidence confirmed that the defendant held himself out as "Agent 13" of the so-called Non-Central Intelligence Agency.  He aggressively attempted to recruit various individuals via the internet into his radical Islamic causes and enterprise.  The subjects of his recruiting efforts spanned the U. S.,  the Phillipines, Kuwait, Jordan, Egypt, and Iraq.  The Government further presented alarming evidence connecting  the defendant to: the www.alm2sda.net  ("The Jihad Den") terrorist website; web sites describing how to smuggle Mujahideen inside the U.S., and how to construct H-Bombs; encrypting e-mail messages, constructing ultra secure 16-digit computer passwords; a domestic terrorist plan described as "Operation Oklahoma II"; radical groups and philosophies such as Wahabism, Al Qaida,  Islamic Salafi Brothers; sleeper cells;

shaving off beards; trafficking in weapons from Mexico; aiding Muslim brothers in Iraq and Chechnya; deceiving the FBI; and smuggling handguns undetected on to aircraft. The defendant's internet recruiting efforts were independently identified by INTERPOL, and employed as part of their training programs as examples of how terrorists are using the internet to communicate and recruit.

The Government argues that subject case is indeed one that the Court should exercise its broad discretionary power to impose the maximum statutory sentence. Based upon the various criteria set forth in 18 U.S.C. § 3553(a), together with the advisory guidance of the U.S.S.G. the maximum statutory sentence becomes appropriate. Considering the nature and circumstances of the offense; the history and characteristics of the defendant; the seriousness of the offense; the defendant's total disdain for U.S. law; the need for a just punishment and adequate deterrence; and most importantly the protection of the American public, this defendant has earned a sentence that includes a 5 year period of incarceration, a $250,000 fine, a $100 special assessment, and 3 years of supervised release.

The fact that this defendant is scheduled to be deported to his native Jordan following completion of whatever sentence that may be imposed in this case, should not provide any basis for leniency. To do so, would in essence be providing a reward to the defendant for his prior violation of U.S. immigration laws. The defendant should receive a sentence separate and apart from his prior immigration case. He should receive no greater or lesser punishment than a similarly situated American citizen criminal defendant facing identical criminal charges. To do otherwise would be unfair and unjust.

## CONCLUSION

For all the reasons discussed above, the defendant MOHAMMAD RADWAN OBEID should be sentenced to a 5 year period of incarceration, a $250,000 fine, a $100 special assessment, and 3 years of supervised release.

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney


s/Dwight K. Keller
DWIGHT K. KELLER (0074533)
Assistant United States Attorney
Attorney for Plaintiff
602 Federal Building
200 West Second Street
Dayton, Ohio 45402
(937) 225-2910
Fax: (937) 225-2564
Dwight.Keller @usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum was served this 26th day of May, 2006, electronically on: Shawn Kelly, Esq.

s/Dwight K. Keller
DWIGHT K. KELLER (0074533)
Assistant United States Attorney
